*This opinion is subject to revision before final publication in the Pacific Reporter*

**2023 UT 24**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

SALT LAKE COUNTY,
*Petitioner,*

*v.*

UTAH STATE TAX COMMISSION and DELTA AIR LINES, INC.,
*Respondents.*

No. 20210938
Heard May 8, 2023
Filed November 9, 2023

On Petition for Review of Agency Decision

Utah State Tax Commission
Judge Jane Phan
No. 17-979

Attorneys:

Sim Gill, Timothy A. Bodily, Bradley C. Johnson,
Timothy J. Bywater, Salt Lake City, for petitioners

Sean D. Reyes, Att'y Gen., Sarah E. Goldberg, Laron J. Lind,
Michelle A. Lombardi, Asst. Atty's Gen., Salt Lake City,
for respondent Utah State Tax Commission

Gary R. Thorup, James D. Gilson, Cole P. Crowther, Salt Lake City,
for respondent Delta Air Lines, Inc.

JUSTICE HAGEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE PEARCE,
JUSTICE PETERSEN, and JUSTICE POHLMAN joined.

JUSTICE HAGEN, opinion of the Court:

### INTRODUCTION

¶1 To ensure "that each person and corporation pays a tax in proportion to the fair market value of his, her, or its tangible property," the Utah Constitution requires that all tangible property be

"assessed at a uniform and equal rate in proportion to its fair market value, to be ascertained as provided by law." UTAH CONST. art. XIII, § 2(1)(a). In 2017, the Utah Legislature amended Utah Code section 59-2-201 by adding subsection 4 (the Aircraft Valuation Law), which provides a preferred method for ascertaining the fair market value of one particular type of tangible property—aircraft. The question presented in this case is whether the application of the Aircraft Valuation Law to Delta Air Lines' aircraft resulted in an assessment below fair market value in violation of the Utah Constitution.

¶2 For tax year 2017, the Property Tax Division valued Delta's aircraft according to the statute's preferred methodology, which required the Division to add together the current market value for each individual aircraft and then apply a fleet discount based on the number of aircraft Delta owns. Salt Lake County challenged the valuation before the Utah State Tax Commission, asserting that the valuation violated the Utah Constitution because it did not reflect the fair market value of Delta's aircraft. The County contended that other valuation methods that assess the value of the aircraft operating together as a unit should be used, and it presented evidence that those methods produced a higher valuation of Delta's property.

¶3 The Commission concluded that the Division correctly followed the requirements of the Aircraft Valuation Law in determining the 2017 value of Delta's aircraft. The Commission further found that the County did not carry its burden to establish by clear and convincing evidence that the legislature's preferred method of valuation did not reasonably reflect fair market value. Because the County did not make the required statutory showing, the Commission declined to apply the alternative valuation method advanced by the County.

¶4 The County petitions this court to review the Commission's determination. The County contends that the Aircraft Valuation Law, as applied to the 2017 assessment of Delta's aircraft, violates the Utah Constitution's requirement that property be assessed uniformly in proportion to its fair market value. Specifically, the County argues that the Aircraft Valuation Law's preferred methodology resulted in valuing Delta's aircraft below fair market value.

¶5 The Aircraft Valuation Law allows the Commission to use an alternative valuation method if the preferred method does not reasonably reflect fair market value. But to successfully invoke that statutory safety valve, certain conditions must be met. Because the County did not make the showing necessary to trigger the alternative valuation method, it cannot demonstrate that the Aircraft Valuation

Law, as applied to Delta's 2017 assessment, violates the fair market value provision of the Utah Constitution.

## BACKGROUND

¶6 The property tax obligations of certain businesses—including airlines—are centrally assessed by the Utah State Tax Commission, rather than by individual counties. *See* UTAH CODE § 59-2-201(1)(a)(iii). The Commission's Property Tax Division performs the original assessments, subject to review by the Commission. UTAH ADMIN. CODE R861-1A-16(4)(c), R884-24P-62.

¶7 Before 2017, the Division assessed airline properties under a unitary approach. A unitary approach "value[s] the synergistic nature of a business's collective property." *Salt Lake City S. R.R. Co. v. Utah State Tax Comm'n*, 1999 UT 90, ¶ 21, 987 P.2d 594. It "attempt[s] to capture the fair market value of [a] [c]ompany's property operating together as a single unit." *Id.*

¶8 Employing the unitary approach, the Division used a combination of three appraisal methods to determine the value of an airline's property operating as a single unit. Those methods consisted of the cost valuation method, which "determines property value based on original cost less depreciation;" the income method, which "determines property value by computing the present value of anticipated income generated by the property;" and the market method, which "examines the prices at which comparable properties have been bought and sold." *Id.* ¶ 14. The appraisers for the Division would then reconcile these various valuation methodologies by assigning each methodology a different weight based on the quality of the evidence and other factors of appraisal judgment. The methods used and the weight that the Division placed on each method could vary by airline.

¶9 In 2017, the legislature enacted the Aircraft Valuation Law, establishing a single methodology for valuing aircraft when determining the property tax obligation of airlines. UTAH CODE § 59-2-201(4).[1] Subsection 4 requires the Commission to assess the fair market value of aircraft by using the "Airliner Price Guide" (APG), an airline industry pricing publication. *Id.* § 59-2-201(4)(b)(ii). And when valuing an airline's fleet, subsection 4 provides for an incremental downward "fleet adjustment" of "up to a maximum 20% reduction." *Id.* § 59-2-201(4)(c)(iii). But the statute permits the Commission to use

---

[1] The legislature has amended Utah Code section 59-2-201 since 2017. But because there have been no material changes to subsection 4, we cite the current version of the code.

an alternative valuation method where it "has clear and convincing evidence that the aircraft values reflected in the [APG] do not reasonably reflect fair market value of the aircraft" and it "cannot identify an alternative aircraft pricing guide from which the commission may determine aircraft value." *Id.* § 59-2-201(4)(d)(i), (ii).

¶10 In 2017, Delta's operating property in Utah was located entirely in Salt Lake County. The Division prepared its 2017 assessment of Delta's aircraft according to the Aircraft Valuation Law's mandates, placing "100% weight on the [APG] methodology that used current market values minus a 20% fleet adjustment."

¶11 The APG methodology resulted in a $14.6 billion fair market valuation of Delta's operating property. The Division also prepared valuations of Delta's property using two other methodologies. The cost approach resulted in a valuation of $21.3 billion, and the income approach resulted in a valuation of $40.9 billion. But because the Aircraft Valuation Law requires the Commission to use the APG with a fleet discount, the Division placed no weight on those other methodologies.

¶12 The County objected before the Commission to the Division's 2017 assessment of Delta's property, asserting that the Division did not assess the property at fair market value and, therefore, violated the Utah Constitution. In support of that argument, the County submitted its own appraisal of $37.3 billion. The County's appraisal used a combination of a cost approach, income approach, and stock- and debt-based market approach, but it did not include an APG valuation. The County's appraiser reported that he did not use an APG valuation as required by the Aircraft Valuation Law because, in his opinion, it did not reflect fair market value.

¶13 Delta submitted its own expert's report, rebutting the County's appraisal. Delta's report identified a number of errors in the County's appraisal, but its primary critique was that the County's expert did not consider the application of either the APG or any alternative aircraft pricing guide as required by the Aircraft Valuation Law.

¶14 The Commission determined that the Division's assessment using the APG was the correct valuation under the Aircraft Valuation Law. The Commission further concluded that the County had not met its burden, as required by the Aircraft Valuation Law, to support using an alternative method of valuation for Delta's property. Because "[i]t is not for the Tax Commission to determine questions of legality or constitutionality of legislative enactments," *Nebeker v. Utah State*

*Tax Comm'n*, 2001 UT 74, ¶ 15, 34 P.3d 180 (cleaned up), the Commission did not address the County's constitutional challenge.

¶15 The Commission upheld the Division's 2017 assessment of Delta's property. The County petitions for review of the Commission's determination. We have jurisdiction to review the Commission's decision under Utah Code section 78A-3-102(3)(e)(ii).

## ISSUE AND STANDARD OF REVIEW

¶16 The County challenges the constitutionality of the Aircraft Valuation Law as applied to the 2017 assessment of Delta's aircraft.[2] "Because it is not for the [T]ax [C]ommission to determine questions of legality or constitutionality of legislative enactments, we have no agency decision to review" regarding the constitutionality of the Aircraft Valuation Law. *Durbano Props., LC v. Utah State Tax Comm'n*, 2023 UT 6, ¶ 9, 529 P.3d 348 (cleaned up). We "therefore address the constitutionality of the statute for the first time as a question of law." *Id.*

## ANALYSIS

¶17 The County argues that the Aircraft Valuation Law is unconstitutional as applied by the Commission to assess the value of Delta's aircraft for tax year 2017. Under the Utah Constitution, "each person and corporation pays a tax in proportion to the fair market value of his, her, or its tangible property." UTAH CONST. art. XIII, § 2(1). And such tax must be "assessed at a uniform and equal rate in proportion to its fair market value." *Id.* § 2(1)(a).

¶18 "'Fair market value' means the amount at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts." UTAH CODE § 59-2-102(13)(a). In other words, "the valuation for assessment and taxation shall be, as near as is reasonably practicable, equal to the cash price for which the property valued would sell in the open market." *Bd. of*

---

[2] Respondent Utah State Tax Commission filed a letter in lieu of a brief stating that it takes no position on the issues before us, citing *Nebeker v. Utah State Tax Comm'n*, 2001 UT 74, ¶ 15, 34 P.3d 180. We note, however, that although the Commission lacks jurisdiction to rule on the constitutionality of a statute, it is not prohibited from taking a position on the matter as a party.

*Equalization of Salt Lake Cnty. v. Utah State Tax Comm'n ex rel. Benchmark, Inc.*, 864 P.2d 882, 885 (Utah 1993) (cleaned up).[3]

¶19 But "the term 'market value' is at best an approximation." *Rio Algom Corp. v. San Juan Cnty.*, 681 P.2d 184, 192 (Utah 1984). So "[d]espite [the] judicial and statutory definitions, '[fair] market value' remains a fluid standard." *Benchmark, Inc.*, 864 P.2d at 885; *see also id.* at 192.

¶20 The legislature has constitutional authority to determine the method by which fair market value is assessed. *Rio Algom Corp.*, 681 P.2d at 191–92; *see also Benchmark, Inc.*, 864 P.2d at 885. Utah's constitution dictates that fair market value is "to be ascertained as provided by law." UTAH CONST. art. XIII, § 2(1)(a). Accordingly, under the constitution, "[t]he method or yardstick by which . . . [fair market value] is to be determined shall be prescribed by the legislature." *Rio Algom Corp.*, 681 P.2d at 191–93 (*citing United States Smelting, Refin. & Mining Co. v. Haynes*, 176 P.2d 622, 627 (Utah 1947)).

¶21 There are "numerous formulae used to determine market value" and different valuation methods can be used to assess different kinds of property. *Id.* at 192. In other words, the constitution does not

---

[3] When this court decided *Board of Equalization of Salt Lake County. v. Utah State Tax Commission ex rel. Benchmark, Inc.*, 864 P.2d 882(Utah 1993), the constitutional language at issue resided in article XIII, section 3. In 1993, article XIII, section 2(1) provided:

> All tangible property in the state, not exempt under the laws of the United States, or under this Constitution, shall be taxed at a uniform and equal rate in proportion to its value, to be ascertained as provided by law[.]

And article XIII, section 3 provided in part:

> The Legislature shall provide by law a uniform and equal rate of assessment on all tangible property in the state, according to its value in money . . . . The Legislature shall prescribe by law such provisions as shall secure a just valuation for taxation of such property, so that every person and corporation shall pay a tax in proportion to the value of his, her, or its tangible property . . . .

Since then, the Utah Constitution has been amended so that the material language at issue is contained in article XIII, section 2. *See* UTAH CONST. art. XIII, § 2; *see also Summit Water Distrib. Co. v. Utah State Tax Comm'n*, 2011 UT 43, ¶ 22 n.6, 259 P.3d 1055. This move, and the changes to the language, do not alter our analysis.

require "that the same yardstick or method of determining value shall be used with respect to all kinds of property." *United States Smelting, Refin. & Mining Co.*, 176 P.2d at 627. This is because "[v]aluation is an art, not a science. It is a function of judgment, not of natural law." *Alta Pac. Assocs., Ltd. v. Utah State Tax Comm'n*, 931 P.2d 103, 108 (Utah 1997) (cleaned up).

¶22 Through the addition of the Aircraft Valuation Law, the legislature has prescribed a preferred method for valuing one type of property—aircraft owned by airlines such as Delta. The statute ordinarily requires the Commission to use the APG to determine the fair market value of individual aircraft. UTAH CODE § 59-2-201(4)(b)(ii). The APG is "a nationally recognized publication that assigns value estimates for individual commercial aircraft" that are "in average condition typical for the aircraft's type and vintage." *Id.* § 59-2-201(4)(a). If the APG does not provide for a fleet adjustment, the statute also requires the Commission to reduce "the value of each aircraft in the fleet by .5% for each aircraft over three aircraft up to a maximum 20% reduction." *Id.* § 59-2-201(4)(c)(iii). Once the Commission identifies the APG's current market value for each individual aircraft and applies the fleet adjustment, it adds those values together to arrive at the total value of all aircraft owned by a particular airline. Because this method adds together the average price that a buyer would pay for each individual aircraft (modified by the fleet adjustment, if applicable), it is a summation approach.

¶23 Although the use of the APG is the preferred method for valuing aircraft, the statute provides a safety valve if the Commission has sufficient evidence that the APG does not reasonably reflect fair market value. *See id.* § 59-2-201(4)(d). The Commission may use an alternative method of valuing aircraft if two conditions are met: (1) the Commission "has clear and convincing evidence that the aircraft values reflected in the [APG] do not reasonably reflect fair market value of the aircraft," and (2) the Commission "cannot identify an alternative pricing guide from which the [C]ommission may determine aircraft value." *Id.* § 59-2-201(4)(d)(i)–(ii).

¶24 The County contends that this statutory scheme, as applied, violated the Utah Constitution because it did not allow the Commission to assess Delta's operating property at fair market value. The County asserts that the statute prevented the Commission from reaching fair market value in three ways. First, the County says the statute mandates a methodology that undervalues aircraft used as part of an operating airline and takes away the Commission's discretion to apply a unitary valuation approach, which the County believes would more accurately reflect fair market value of such

aircraft. Second, the County says that the statute violates the constitution because it requires the Commission to apply a fleet discount to three or more aircraft and that such a reduction is not given to similar property. Third, the County says the statute violates the constitution because it requires the Commission to use a clear and convincing evidence standard when valuing aircraft even though all other taxpayer assessments are subject to a preponderance of the evidence standard.

¶25 Although each of the County's three arguments would presumably apply to any application of the Aircraft Valuation Law, it has disavowed any facial challenge and insists that its arguments on review are limited to whether the statute is unconstitutional as applied to the 2017 assessment of Delta's property. Therefore, we do not separately consider each of the County's arguments—whether the statute's preferred methodology, fleet discount, or use of the clear and convincing evidence standard violate the Utah Constitution in the abstract. We consider only whether the Aircraft Valuation Law, as applied to Delta's 2017 tax assessment, violated the Utah Constitution by valuing Delta's aircraft below fair market value.

¶26 We begin an analysis of a statute's constitutionality "with the proposition that acts of the Legislature are presumed constitutional, especially when dealing with economic matters based on factual assumptions." *Rio Algom Corp.*, 681 P.2d at 190. "The presumption of constitutionality applies with particular force to tax statutes." *Id.* at 191; *accord Beaver Cnty. v. WilTel, Inc.*, 2000 UT 29, ¶ 18, 995 P.2d 602. And we resolve "any reasonable doubts in favor of constitutionality." *In re Childers-Gray*, 2021 UT 13, ¶ 14, 487 P.3d 96 (cleaned up). "[T]he party attacking the constitutionality of a statute has the burden of affirmatively demonstrating that the statute is unconstitutional." *WilTel, Inc.*, 2000 UT 29, ¶ 18 (cleaned up). This is "a heavy burden," requiring a party to "provide a sufficient basis for such challenge, and not merely a 'murky' basis for setting [the statute] aside." *In re Childers-Gray*, 2021 UT 13, ¶ 68 (cleaned up).

¶27 A statute "may be unconstitutional either on its face or as applied to the facts of a given case." *Gillmor v. Summit Cnty.*, 2010 UT 69, ¶ 27, 246 P.3d 102 (cleaned up). "In an as-applied challenge, a party concedes that the challenged statute may be facially constitutional, but argues that under the particular facts of the party's case, the statute was applied in an unconstitutional manner." *Id.* ¶ 27 (cleaned up). To meet the burden required in an as-applied constitutional challenge, the County must show that "there was something uniquely unconstitutional about the way in which the [Airline Valuation Law] w[as] applied to" Delta's 2017 assessment. *Id.* ¶ 30.

¶28 Both parties agree that to prevail on its petition, "the County must show that the Aircraft Valuation Law, as applied by the Commission, resulted in Delta's taxable operating property being assessed below fair market value (and thus contrary to Utah Const. art. XIII, § 2(1))." We conclude that the County has not met its burden.

¶29 The County cannot demonstrate that the application of the Aircraft Valuation Law resulted in undervaluing Delta's aircraft because it did not fully avail itself of the safety valve provided in the statute. The Aircraft Valuation Law allows the Commission to use an alternative valuation method if the preferred APG method does not reflect fair market value. UTAH CODE § 59-2-201(4)(d). Before an alternative method can be used, however, the statute requires two conditions to be met. *Id.* The County, as the proponent of using an alternative method for valuing Delta's property, had the burden of establishing both conditions. *See Utah Ry. Co. v. Utah State Tax Comm'n*, 2000 UT 49, ¶ 6, 5 P.3d 652 (noting that the protesting taxpayer had the burden to establish two conditions before the Commission could adopt a lower valuation).

¶30 The first condition in section (4)(d) requires "clear and convincing evidence that the aircraft values reflected in the [APG] do not reasonably reflect fair market value of the aircraft." UTAH CODE § 59-2-201(4)(d)(i). In support of its showing under subsection (4)(d)(i), the County offered evidence that a unitary valuation method—such as the income method—reflected the fair market value of Delta's aircraft because it valued the aircraft at its highest and best use, that is, as "part of a unit of air transportation property functioning as a going concern." The County's appraiser opined that the summation method required by the Aircraft Valuation Law did not "allow the [Commission] to meet the constitutionally mandated fair market value standard" when assessing Delta's aircraft because Delta's property could not be valued at its "highest and best use," which would be as part of an operating airline. The Assistant Director of the Division largely agreed, explaining that absent the Aircraft Valuation Law, he would likely place the most weight on an income approach when valuing the operating property of an airline because, "on an income-producing property, cash flow is the primary driver for how these properties are bought and sold and how . . . they're valued." And the Manager of the Division similarly testified that, absent the Aircraft Valuation Law, he would have relied primarily on the income approach because "when buyers and sellers of the unitary properties like Delta . . . go into the market to buy these types of properties, they primarily are looking at income approaches to value."

¶31 The County also presented evidence that a unitary valuation method would value Delta's total operating property much higher than the statutory summation method relying on the APG. Using the APG's values for each aircraft and applying the fleet discount according to the Aircraft Valuation Law, the Commission calculated the fair market value of Delta's operating property at $14.8 billion. Using a unitary method for comparison resulted in a fair market value between $39.5 billion and $40.9 billion.

¶32 For purposes of this review we assume, without deciding, that this evidence was sufficient to prove by clear and convincing evidence that the APG method valued Delta's aircraft below fair market value, satisfying the safety valve's first condition. But even if the first condition is satisfied, the Commission cannot use an alternative valuation method unless the Commission "cannot identify an alternative aircraft pricing guide from which the commission may determine aircraft value." *Id.*§ 59-2-201(4)(d)(ii). The County has not shown that it met that second condition.

¶33 The County does not point to any evidence in the record that would satisfy subsection (4)(d)(ii). As the Commission recognized, the County's expert did not provide "any discussion or analysis regarding the Subsection (4)(d)(ii) requirement." Delta's expert, on the other hand, testified that there were other airliner pricing guides from which the Commission could have determined aircraft value. And "[n]o one compared what aircraft value would be achieved from other pricing guides compared to the APG." Accordingly, the Commission concluded that "Subsection (ii) has not been addressed and the County's argument for an alternative method for valuing the aircraft is unsupported."

¶34 We cannot conclude that the Aircraft Valuation Law is unconstitutional as applied where the County did not take advantage of the statutory safety valve to challenge the assessment of Delta's property. Although the County produced evidence under subsection (4)(d)(i) that the statute's summation approach undervalued Delta's aircraft in comparison to a unitary approach, it never performed that comparison for other available pricing guides as required by subsection (4)(d)(ii). We recognize that the heart of the County's argument is that, regardless of what pricing guides are used, "it would generally be coincidental if the statute's type of summation methodology reached fair market value." But the County never attempted to show that no available pricing guides would have reached fair market value for Delta's aircraft in this particular case.

¶35 To show that the Aircraft Valuation Law is unconstitutional as applied to Delta's 2017 assessment, the County first needed to challenge the valuation using the mechanism provided by the statute. Where the County did not fully avail itself of the statute's safety valve, we cannot conclude that the statute is unconstitutional as applied in this particular case.

## CONCLUSION

¶36 Because the County failed to fully avail itself of Utah Code section 59-2-201(4)(d)(ii), it cannot show that the Aircraft Valuation Law violated the Utah Constitution as applied to Delta's 2017 assessment.

―――――――――